MARY W. HOFFMAN, appellant,

*v.*

SARAH CHAMBERLAIN, respondent.

The general rule of deduction from the consideration agreed to be paid for a list of chattels, where title has failed as to a portion of them, is the difference between the value of the entire lot and the value of the remaining portion, after deducting those articles title to which did not pass.

<hr>

On appeal from a decree of the chancellor, whose opinion is reported in *Chamberlain* v. *Hoffman, 11 Stew. Eq. 40.*

*Mr. P. S. Scovel,* for appellant.

*Mr. C. A. Bergen,* for respondent.

The opinion of the court was delivered by

REED, J.

Sarah Chamberlain, the complainant below, together with one Amelia B. Ellis, sold to Mary W. Miller, now Hoffman, certain household furniture for the sum of $1,800.   A part of the property sold belonged to Mrs. Chamberlain, and a part to Mrs. Ellis.   It was paid for in the following manner: $500 in cash were paid to Mrs. Ellis, and to her were given, also, two notes of $150 each, and one note of $100.   To Mrs. Chamberlain were given nine $100 notes.   All of Mrs. Ellis's notes are paid. Three of the Chamberlain notes are paid, leaving still unpaid six of the notes given to her.   At the time these notes were given a *chattel* mortgage was executed to Mrs. Chamberlain, to secure all these notes to the amount of $1,300.   Mrs. Chamberlain filed her bill to foreclose this mortgage.   The defence to it is that some of the articles sold did not belong to either Mrs. Ellis or Mrs. Chamberlain.   All the articles to which title is alleged to have failed were sold as the property of Mrs. Ellis, and all the notes given to her have been paid.   Only the remaining six notes given to Mrs. Chamberlain are outstanding, and it is as security for the payment of these that the chattel mortgage is being foreclosed.   If this transaction is to be treated as involving two sales, with a distinct consideration for each, then there is no defence to the present suit.

The failure of title to Mrs. Ellis's goods could not affect the consideration paid to Mrs. Chamberlain under a distinct contract. Upon a consideration of all the circumstances surrounding the sale, I think the affair was understood to be a single transaction, in which all these household goods were sold for a single price. The two ladies who sold were relatives, and had been intimately connected in business.

They desired to sell all the furniture in the house to one person.   The values which they fixed to the separate articles were for the purpose of determining their separate interests in the consideration.

The notes were made in part to one and in part to the other vendor for the purpose of convenience.

The chattel mortgage was given to secure all the notes, without regard to whom they were payable. So far as the purchaser felt concerned in the affair, all she wished was to get all the furniture as it stood in the house. She was not concerned in the proportion of interest in the entire stock, so long as she got the title to it all. The price was agreed upon not in view of any part but of the whole lot. The consideration was single, in which both vendors were jointly concerned, and both vendors were equally responsible for any defect in the title to the goods sold for which this consideration passed.

In what articles was there a failure of title?

It is claimed that title failed to a portion of the goods which Mrs. Ellis had bought of a Mr. Hutchins, and which Mr. Hutchins recovered of Mrs. Chamberlain by an action of replevin. It appears, however, that the replevin suit against Mrs. Chamberlain was undefended, no notice having been given to Mrs. Ellis or Mrs. Hoffman of the pendency of the action. Nor does the evidence in this cause show that Mrs. Ellis had no title to those articles. I think that she had, and that the transaction by which she got possession of the articles was a sale and not a bailment, and although she had not paid for them, she could and did pass a title to Mrs. Chamberlain upon which she could have successfully stood in a defence to the replevin suit. The remaining articles in which there was an alleged failure of title, were the three Baltimore heaters. As to these, it appears that they belonged to the landlord of Mrs. Ellis. Although she put one in the rented premises, the arrangement by which this was done contemplated that it should remain there after the termination of her lease. The other two were placed in the house by the landlord. In respect to these heaters, neither of the vendors to Mrs. Chamberlain had title, and there should be a deduction from the amount due upon the six outstanding notes for this failure of title.

The question then arises, What is the proper measure of the deduction to be allowed? Perhaps no feature relating to the

sale of chattels has been so little and so unsatisfactorily discussed and determined in previous adjudications as this. It seems to be the settled doctrine in the English courts that where there is a failure of title to all the chattels sold, the purchaser can treat the transaction as presenting an instance of an entire failure of consideration, and may sue for the money paid. *Eichholz* v. *Bannister*, *17 C. B. (N. S.) 708.*

There is, however, no case decided in their courts that holds that the right of a purchaser is limited to a recovery of this sum in an action brought, not for the money paid, but for a breach of the warranty of title. The rule is entirely settled that for a breach of a covenant for title to real property the measure of damages is the consideration paid and the interest upon such sum. This rule, early settled in the English courts, is the rule in this and many other states.

This rule has also been adopted in many states in this country as equally applicable to breaches of the warranty of title to personal property. The following cases display the extent to which this rule has here been adopted : *Noel* v. *Wheatly, 30 Miss. 181 ; Ware* v. *Weathnall, 2 McCord 413 ; Wood* v. *Wood, 1 Metc. (Ky.) 512 ; Crittenden* v. *Posey, 1 Head 311 ; Ellis* v. *Gosney, 7 J. J. Marsh. 111 ; Arthur* v. *Moss, 1 Oreg. 193 ; Goss* v. *Dysant, 31 Tex. 186.*

A perusal of the opinions in these cases and the reasons given for the adoption of this rule in the sale of chattels, is not calculated to vindicate the wisdom of the rule.

The doctrine, so far as it is applicable to breaches of the covenants in real conveyances, rests upon grounds which appertain to the character of real estate. The reason for the adoption of this rule in this class of actions is set forth at length by Kent in the leading case of *Staats* v. *Ten Eyck, 3 Cai. Cas. 111.*

The rule is an exception to the general principle which underlies the measure of damages for breaches of contract, namely, the standard of compensation. This latter rule applies to actions for breaches of warranties of quality in the sale of chattels to its full extent. In what respect the loss resulting from a breach of the warranty of title differs from that resulting from a breach of the

Hoffman *v.* Chamberlain.

warranty of quality in dealing with personal property, is difficult to conceive. Outside of the vice of extending an exception to a general rule in any event, there appears to be no reason why the rule of recovery should not be uniform in actions upon both kinds of warranties. Nor do the cases in which the exceptional rule applicable to damages for breaches of real covenants has been extended to warranties of title to chattels, in my judgment, present any reason for such prejudicial action. In nearly all of these cases the question arose in states when and where slavery prevailed, and was in respect to breaches of a warranty of title to slaves. The reason stated in many of the cases for the adoption of the rule was the precarious and fluctuating character of that kind of property. In other cases the court is content with the citation of the early case of *Armstrong* v. *Percy, 5 Wend. 535,* as the authority for the rule.

In regard to the latter case, it may be remarked that the rule is drawn from a remark of the judge who delivered the opinion in that case, in a single sentence, unsupported by authority or reason. And this remark was made in the face of the result in the previous case of *Blasdale* v. *Babcock, 1 Johns. 517,* in which there was a recovery of the value of a horse and costs upon a warranty of title. The matter actually decided in the case of *Armstrong* v. *Percy* was, that, where an action had been brought against the purchaser by the real owner, who was not the vendor, the purchaser could recover from the vendor the money paid, besides the costs of the suit which he was obliged to defend.

There was no suggestion that the rule controlling in this respect an action for breach of this kind of warranty differed from the rule in actions upon other kinds of warranties. The cases cited, namely, *Curtis* v. *Hannay, 3 Esp. 82 ; Caswell* v. *Coare, 1 Taunt. 566 ; Lewis* v. *Peake, 7 Taunt. 153,* were all actions for breach of warranty of quality, and the measure of damages in these cases was shown to have been dependent upon the pleadings. In the first two of these cases no special damages were set out in the declaration, and there was nothing but the amount of the consideration to show what was lost, so that was ruled to be the measure of damages. In the last case the claim for dam-

ages having been broader, it was permitted to the plaintiff to recover, in addition to this, the costs of a suit against him by his vendee, to whom he had sold with a similar warranty.

There is nothing in the matters decided in the case of *Armstrong* v. *Percy* which fixes, as a rule, that for the present kind of warranties the measure of damages is limited to the consideration paid, and interest. . The rule, I think, in all actions of this kind, is compensation. Where no special damages are set forth the measure of the loss is the value of the property purchased ; and, where there is no evidence of value but the consideration paid, that will be taken as the standard of value. Where there is a failure of title to a part, or an inferior title only is sold, the loss is the difference between the property as conveyed and its value, had the title been as warranted.

In support of the view that this general rule, applicable to damages, appertains to actions upon breaches of warranties of title to chattels are the cases of *Grose* v. *Hennessey, 13 Allen 389 ; Rowland* v. *Shelton, 25 Ala. 217,* and the text of Mr. Sedgwick, *Meas. of Dam. 294.* My opinion is that there should be a deduction, in this case, of the difference between the value of the entire lot of chattels sold and the value of the lot without the heaters. The only evidence of the value of the entire lot is what it was sold for, namely, $1,800. The evidence in regard to the value of the heaters fixes their value at about $200.

Adopting these values, there should be a deduction for the latter sum from the notes, as of the date of the sale, leaving due $400 and interest.

The decree should be reversed.

*Decree unanimously reversed.*

NOTE.—The rule in *Armstrong* v. *Percy, 5 Wend. 535,* was criticised in *Kingsbury* v. *Smith, 13 N. H. 123 ;* see *Willis* v. *Dudley, 10 Ala. 937 ; Moulton* v. *Scruton, 39 Me. 289 ; Johnson* v. *Meyers, 34 Mo. 257 ; Brown* v. *Woods, 3 Coldw. 182 ; Sims* v. *Marryatt, 17 Ad. & El. (N. S.) 290 ; Burt* v. *Dewey, 40 N. Y. 283 ; 2 Sutherland on Dam. 418.*—REP.